## Lincoln Insurance Co. v. ITO Corp. of Ameriport

*Howard Gersh*, for plaintiffs.
*Keen McDonald*, for defendants.

TAKIFF, *J.*, July 2, 1980—Before the court is a petition for declaratory judgment, seeking a determination of the status of petitioner, Silent Hoist and Crane Co. (hereinafter Silent Hoist), as an insured under a policy of insurance issued by Liberty Mutual Insurance Company to Internatoinal Terminal Operating Company, Inc. (hereinafter ITO).

Silent Hoist is the lessor of a fork lift truck which was leased to ITO, a stevedore company, under a lease agreement dated August 20, 1975. The fork lift truck was in the possession and control of ITO on February 16, 1977, when James W. Park, an ITO employe, was run over by the truck and sustained fatal injuries. His administratrix has instituted suit against Silent Hoist, averring a defect in the design of the fork lift truck, and Silent Hoist has joined ITO as a third party defendant to that suit.

The lease agreement between Silent Hoist and ITO required ITO, as lessee, to procure public liability insurance "insuring the Lessor," Silent Hoist.[1] In addition, the lease obligated the lessee to indemnify and hold harmless the lessor against liability for lessee's actions.[2]

1. "8. . . . The Lessee shall also obtain and pay for public liability insurance insuring the Lessor, with insurance companies satisfactory to the Lessor, against damages or claims therefor for personal injuries and property damage, in adequate amounts. Certificates of such insurance shall be provided by the Lessee to the Lessor."

2. "9. Nothing in this lease agreement shall be construed to relieve the Lessee from liability either to the Lessor or to any other person for the negligence or willful acts of itself, its agents or servants, including the negligence of the Lessee in failure to maintain the equipment in good repair. Lessee further agrees to hold Lessor harmless from all claims, suits, damages and liabilities of every kind caused by or arising from personal injury or property damage sustained by employees or others arising from the negligence or willful acts of Lessee, its agents or servants."

ITO admits that it did not place insurance specifically on behalf of Silent Hoist, although it routinely provided insurance for its other lessors of equipment via numerous endorsements to its policy with Liberty Mutual. However, paragraph 12 of the lease specifically provided for lessee's noncompliance with its duty to procure insurance, permitting lessor, under such circumstances, to "effect such insurance, or pay said taxes, fees and similar charges, as the case may be, in which event the cost thereof shall be payable by the Lessee as additional rent with the next month's installment of rent." The presence of Silent Hoist's insurer, Lincoln Insurance Company, as a petitioner herein suggests the existence of an insurance policy, but since it has not been offered in this matter, its scope and terms are unknown.

The insurance policy with which we are here concerned—the ITO-Liberty Mutual policy—affords the following coverage:

I.  Coverage A—Personal Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury, including death at any. time resulting therefrom, sustained by any person.

II.  Contractual Liability. Subject to the limits of liability and to all other terms and limitations of the policy, Coverage A shall include coverage for the liability for personal injury assumed by the insured (a)  under any contract which is not an extension of the liability imposed upon the insured by law, and (b)  any written contract designated in Contractual Liability endorsement attached to and forming a part of this policy.

Liberty Mutual also contractually undertook the customary duty to defend any suit against the in-

sured alleging injury or death under circumstances for which coverage would be afforded.

Silent Hoist claims that it is an insured under section II, Contractual Liability, subsection (b), by reference to the contractual liability endorsement referred to therein, which provides: "In consideration of an additional premium included in the declarations and to be adjusted upon audit, it is hereby agreed that such insurance as is afforded under paragraph (b) of Insuring Agreement II, Contractual Liability, shall only apply to the liability assumed by the named insured under the indemnification and/or hold harmless provisions of the following written contracts or agreement:

• • •

2. Any easement agreement, agreement required by municpal ordinance, sidetrack agreement, elevator or escalator maintenance agreement, or lease or rental of contractor's equipment agreement;

• • •

7. Unintentional failure on the part of the named insured to comply with the provisions of this endorsement regarding reporting, submitting and giving notice to the company of contracts or agreements shall not invalidate the coverage afforded by this policy."

Liberty Mutual responds, however, that the contractual liability endorsement to subsection (b) addresses the indemnification and hold harmless provision of the lease which is limited to the negligent or willful acts of the lessee, not to liability which may attach because of the lessor's culpable conduct or strict liability. We agree.

Because the indemnification and hold harmless provisions of the lease do not contemplate coverage for harm caused by lessor's acts (or those legally

attributable to the lessor), the insurance afforded by the Liberty Mutual policy's contractual liability endorsement is not applicable. To call upon Liberty Mutual to defend the underlying suit would force it to accept a contract obligation which had never been contemplated by the parties. See Union Paving Co. v. Thomas, 186 F. 2d 172 (3d Cir. 1951).

While ITO's failure to obtain public liability insurance in favor of Silent Hoist may create a right of indemnification against ITO or an action for breach of contract,[3] said right of indemnification would not be one assumed by written contract or generated by liability for personal injury, as required by section II, Contractual Liability.

Moreover, Silent Hoist's position is firmly negated by the definition of "insured" under the ITO-Liberty Mutual policy. While the body of the policy included as a definition of insured, "any interest for whom the named insured is obligated to provide insurance such as is afforded by this policy by virtue of a written contract or agreement covered by this policy," an endorsement submitted as part of the applicable policy deleted that language, substituting the following:

The unqualified word "insured" includes the named insured and also includes (1) any executive officer, director or stockholder thereof, while acting within the scope of his duties as such, and (2) with respect [sic] operations in connection with the necessary or incidental to operations performed by the named insured, any interest listed in Schedule No. 2 of this policy, provided such interest is designated to the company by the named insured. Such insurance as is afforded by the policy to any interest

3. The court is advised that such an action is currently filed at November term, 1978, number 1165.

listed in Schedule No. 2 of the policy shall apply only to injury or death of any employe of the named insured.

Silent Hoist is not among the interests listed in Schedule no. 2 of the policy and, hence, is outside the definition of insured under the insuring agreement.

We find the language of the Liberty Mutual policy clear and unambiguous, and are constrained to apply the plain and ordinary meaning of its term: Topkis v. Rosenzweig, 333 Pa. 529, 5 A. 2d 100 (1939). Accordingly, we hold Silent Hoist not to be an insured under the ITO-Silent Hoist policy.

### DECREE

And now, July 2, 1980, upon consideration of the instant petition for declaratory judgment and following oral argument, it is hereby adjudged and decreed that petitioner Silent Hoist and Crane Co. is not an insured under the insuring agreement entered into by Liberty Mutual Insurance Company and International Terminal Operating Company, Inc.